IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DEBORAH S. MARSHALL, )
)
       Plaintiff, )
)
v. ) Case No. 07-CV-534-JHP
)
WHIRLPOOL CORPORATION, a )
foreign corporation, and UNICARE, )
a corporation, )
)
       Defendants. )

## ORDER AND OPINION

Before the Court are Defendant Whirlpool Corporation's Re-Urged Motion for Partial Summary Judgment [Docket No. 44], Plaintiff Deborah S. Marshall's Response in Opposition [Docket No. 48], and Defendant's Reply [Docket No. 51]. For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

**A.   Procedural History**

Plaintiff Deborah S. Marshall brings the instant action claiming that Whirlpool terminated her employment in retaliation for her pursuit of short term disability benefits and for the purpose of interfering with her attainment of such benefits in violation of ERISA. Plaintiff also asserts claims under the Family Medical Leave Act and the Americans with Disabilities Act.

Whirlpool argues that the short term disability benefits it offers are not part of an "employee welfare benefits plan" subject to ERISA. Whirlpool claims that those benefits are paid from its general assets and therefore fall within the "payroll practice" exclusion set forth in

1

the regulations accompanying ERISA. Whirlpool previously sought summary judgment on Plaintiff's ERISA claim [Docket No. 29], however the Court denied Whirlpool's motion. In an Order issued on September 10, 2008 [Docket No. 37], the Court found that certain material facts were in dispute, thus summary judgment was inappropriate. Specifically, the Court found that:

> the record is actually somewhat ambiguous as to the process through which those benefits are paid. For example, although the affidavit of Whirpool's Paula J. Gill describes the way those benefits are funded (Docket No. 29-2, ¶ 4)("Whirlpool pays benefits from funds of Whirlpool by checks signed by UniCare as Whirlpool's disbursing agent upon a bank account(s) established and maintained by Whirlpool for the purpose of payment of claims. All benefits paid to employees eligible for short-term disability benefits are drawn from Whirlpool's general assets."), her description is inconsistent with the Summary Plan Description (Docket No. 29-3, at 18)("John Hancock Mutual Life Insurance Company pays you a weekly benefit if you become totally disabled[.]") and the Administrative Service Agreement (Docket No. 29-4, at 15)(referencing the agreement as being between Whirlpool and John Hancock). This ambiguity must be resolved before the Court can determine whether the funding of the benefits plan in question is or is not a "payroll practice."

[Docket No. 37, at 5].

After a Status and Scheduling Conference held on October 30, 2008, the parties were given time to conduct discovery related to the ERISA claim and allowed to file a second summary judgment motion regarding the applicability of ERISA to this action. Whirlpool has now filed its Re-Urged Motion for Partial Summary Judgment [Docket No. 44], and continues to argue that the short term disability benefits are paid from its general assets and therefore fall within the "payroll practice" exclusion set forth in the regulations accompanying ERISA. Plaintiff maintains its position that the short term disability benefits do not fall within the "payroll practice" exception and the benefits are part of an ERISA plan. Specifically, Plaintiff argues that the deposition of Paula Gill contradicts statements contained in the Summary Plan Description ("SPD") regarding the source of funding for short term disability benefits. Plaintiff

claims this creates a disputed material fact, thus summary judgment is not proper. Plaintiff also argues that the SPD uses "typical ERISA language" and represents that short term disability benefits are combined with other benefits as part of one plan governed by ERISA. Finally, Plaintiff alleges that the funds set aside to pay the short term disability benefits become trust assets once they are segregated and no longer meet the definition of a payroll practice.

**B.      Factual Background**[1]

Whirlpool provides short term disability benefits to its employees employed in the Technician position. Specifically, an employee is eligible for short term disability benefits when the employee is temporarily disabled due to injury, disease, or pregnancy. An employee is considered to be "totally disabled" if he or she cannot perform any of the usual and customary job duties of the employee. Subject to proof of loss requirements, weekly benefits are paid after the applicable waiting period, if any, for up to 26 weeks depending on the employee's length of service.

UniCare provides administrative services relating to Whirlpool's short term disability program pursuant to an Administrative Service Agreement between Whirlpool and UniCare. As a third party administrator, UniCare makes benefit determinations and acts as a disbursing agent for the payment of short term disability benefits which are funded by Whirlpool. Short term disability benefits are paid by checks signed by UniCare upon a bank account established and maintained by Whirlpool for the purpose of payment of claims. Whirlpool maintains a "zero balance" account with

---

[1] This section contains only the undisputed facts in this case. Although Plaintiff attempts to dispute many of these facts in her brief, she does not direct the Court to anything in the record which specifically controverts the statements contained in Paula Gill's affidavit or deposition. Many of these facts were set out in the Court's previous order, however, due to their importance to the Court's analysis, they are worth repeating here.

Northern Trust Company Bank from which UniCare writes checks for the payment of benefits. The bank account is owned by and set up in the name of Whirlpool Corporation. The account is not a trust account. When a check is presented for payment at the employee's bank, the check is sent to the clearing house at the Federal Reserve Bank. The Federal Reserve Bank notifies Northern Trust Company bank of the total amount of checks that will clear that day. Northern Trust Company bank then contacts the Whirlpool Treasury Department. The Treasury Department then transfers funds from Whirlpool's main operating account at Chase Bank to the Northern Trust bank account to cover all checks that will clear that day. No separate funding is maintained for the payment of short term disability benefits, nor are the benefits funded by insurance, secured by bond, or subject to reimbursement by a third party. The Northern Trust Company bank account is also used for the payment of long term disability benefits. The parties agree that the payment of long term disability benefits is part of an ERISA plan.

The SPD distributed to Whirlpool employees states that "John Hancock Mutual Life Insurance Company pays you a weekly benefit if you become totally disabled[.]" Prior to 1997, John Hancock Mutual Life Insurance Company was the third party administrator for Whirlpool's short term disability program. In 1997, WellPoint Health Networks, Inc. purchased certain assets of John Hancock, and UniCare, a wholly owned subsidiary of WellPoint, became the third party administrator for Whirlpool's short term disability program. The original Administrative Services Agreement, dated January 12, 1992, was executed by a representative of John Hancock, the third party administrator at that time. Subsequently, the Administrative Services Agreement was amended by a substitution of pages which reflect UniCare's status as the third party administrator at all times relevant to this action.

No filings have been made with the Department of Labor and no annual reports have been filed with the Internal Revenue Service pursuant to ERISA §§104(A)(1)(b) identifying or representing in any way that Whirlpool-Tulsa's short term disability benefits program constitutes an employee welfare benefit plan under ERISA.

Plaintiff was employed by Whirlpool as a full time, hourly Technician from August 13, 2001, until her termination from employment in September 2005. Plaintiff's Complaint alleges that she was entitled to short term disability benefits at the time of her discharge. Plaintiff's Complaint further alleges that Defendants violated ERISA by: (1) denying Plaintiff short term disability benefits to which she was entitled; and (2) by terminating her in retaliation for her pursuit of short term disability benefits and/or for the purpose of interfering with her attainment of such benefits.

## **DISCUSSION**

### A. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the

controlling substantive law. *Id.* at 249

## B. Payroll Practice Exception

ERISA provides an eligible employee the right to bring a cause of action against a plan administrator, but only for violating an employee benefit plan governed by that statute. *See* 29 U.S.C. § 1132(a)(1)(B). ERISA defines the terms "employee welfare benefit plan" and "welfare plan" to include any plan that provides employees "benefits in the event of sickness, accident, [or] disability." 29 U.S.C. § 1002(1). However, the Department of Labor's regulations provide certain exceptions to the definition of "employee welfare benefit plan" and "welfare plan" and exclude from ERISA coverage programs referred to as "payroll practices." Specifically, the regulations provide that an "employee benefit welfare plan" shall not include:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons[.]

29 C.F.R. § 2510.3-1(b)(2).

"According to the preamble to the regulation, such plans are exempted from coverage under ERISA because, although related to benefits described in section 3(1) of ERISA, they are more closely associated with normal wages or salary." *Bassiri v. Xerox Corp.*, 463 F.3d 927, 929 (9th Cir. 2006) (internal quotations omitted). Because these plans are more akin to normal wages paid from a company's general assets, "there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits." *McMahon v. Digital Equipment Corp.*, 162 F.3d 28, 36 (1st Cir. 1998). "Rather, employees face the same general risk with their disability payments as they do with their wages or salaries; the company might not have enough general assets to pay them." *Langley v. DiamlerChrysler Corp.*, 502 F.3d 475, 481 (6th Cir.

6

2007).

**C. Whirlpool's Short Term Disability Plan**

Whirlpool's short term disability benefits plan meets the definition of a payroll practice exempt from ERISA governance. First, there is no genuine dispute as to the fact that the plan is funded out of Whirlpool's general assets. Second, even if the SPD indicates that short term disability benefits are part of an ERISA plan, that labeling is not dispositive on the issue. Finally, the Court finds that the payment of short term disability benefits out of a designated account used for the payment of claims does not convert the segregated funds into ERISA plan assets.

*1. Funding*

The evidence establishes that Whirlpool's short term disability benefits are paid out of the company's general assets. Whirlpool's SPD which was distributed to its employees states "John Hancock Mutual Life Insurance Company pays you a weekly benefit if you become totally disabled[.]" Because this statement could be read as a declaration that John Hancock funded the short term disability plan, the Court originally found the record ambiguous as to the process through which the benefits were actually paid. As a result, Whirlpool's first summary judgment motion on this issue was denied. In its current motion, however, Whirlpool has adequately supplemented the record and clarified the apparent discrepancy regarding the payment of the benefits.

The undisputed testimony contained in the affidavit and deposition of Paula Gill, a corporate representative of Whirlpool, establishes the manner in which short term disability

7

benefits are paid.[2] Whirlpool utilizes a third party administrator which makes benefit determinations and acts as a disbursing agent for the payment of short term disability benefits which are funded by Whirlpool. John Hancock was the third party administrator at the time the SPD was distributed, but at all times relevant to this action UniCare was fulfilling that role. As explained by Whirlpool, the statement referencing John Hancock was merely an acknowledgment of John Hancock's status at the time the booklet was written and it was meant to inform employees that they would be dealing with a third party administrator, as opposed to Whirlpool, regarding short term disability matters. Additionally, Whirlpool asserts that neither John Hancock nor UniCare ever funded the short term disability program. Rather, Whirlpool maintains a "zero balance" bank account out of which UniCare writes checks for the payment of benefits. Whirlpool is notified each day of the total amount of benefits paid and transfers money from their general account to cover only the payments for that day.

Although Plaintiff argues that the language in the SPD creates a dispute as to a material fact, she fails to offer any evidence that contradicts Whirlpool's explanation of how the benefits are paid. In fact, based on the arguments in her brief, it doesn't appear that Plaintiff actually disputes that Whirlpool pays the benefits out of its general assets as much as she is merely hoping to manufacture a disputed fact in order to survive summary judgment. Regardless, the Court finds that Whirlpool has provided sufficient evidence regarding the payment process for its short term disability benefits. Further, the Court finds that the short term disability benefits are paid exclusively out of Whirlpool's general assets, therefore, the plan falls squarely within

---

[2] A more detailed explanation of the short term disability program is provided in the Factual Background section above.

the payroll practice exception to ERISA.

*2. Whirlpool's Description of the Plan*

Because Whirlpool's short term disability plan clearly meets the definition of a payroll practice, it is not governed by ERISA, regardless of how the plan is described to employees. Plaintiff argues that Whirlpool represents to its employees that its short term disability plan is governed by ERISA. In support of this argument, Plaintiff alleges the following: (1) the booklet describing the plan uses "typical ERISA language"; (2) Whirlpool describes and analyzes all the benefits provided by the company as a single plan; and (3) the SPD, which discusses the short term disability benefits, states that it is provided in compliance with ERISA and discusses employees' rights under ERISA. Apparently, Plaintiff's contention is that the Court should rely on this description, as opposed to looking at how the benefits are actually paid. Contrary to Plaintiff's argument, a review of relevant case law establishes that the source of funding, not the description of the plan, is the critical inquiry in determining whether the payroll practice exception applies.[3]

The mere labeling or description of a plan by an employer is not determinative as to whether a plan is governed by ERISA. *Langley*, 502 F.3d at 481; *Stern v. Int'l Business Machines Corp.*, 326 F.3d 1367, 1374 (11th Cir. 2003). If an employer's labeling of a plan was held to be dispositive on the issue, employers would be permitted to "engage in regulation shopping" and could "convert an otherwise exempt benefit into one covered under ERISA."

---

[3] Neither the parties' nor the Court's research discovered any Tenth Circuit cases addressing this particular issue, however, the First, Sixth, and Eleventh Circuits have all reached this conclusion. The Court finds the reasoning expressed by those circuits sound and persuasive.

*Langley*, 502 F.3d at 481. Rather than giving employers this unchecked power to determine the applicability of ERISA by simply attaching a label, courts look to how the plans in question are funded. *See Id.*; *Stern*, 326 F.3d at 1373-4; *McMahon*, 162 F.3d. at 38.

As previously discussed, the evidence in this case demonstrates that Whirlpool's short term disability benefits are paid entirely out of its general assets. Additionally, Whirlpool has not treated its short term disability program as an ERISA plan in its filings with the federal government. The only facts which imply the plan is subject to ERISA is the use of typical ERISA language by the booklet/SPD which describes all of the company's employee benefits. The Court, however, finds that this language, without more, is insufficient to transfer an otherwise exempt benefit plan into an ERISA governed plan. Furthermore, other courts have found similar ERISA language found in SPDs did not bring plans under the ERISA rubric when the benefits otherwise met the definition of a payroll exception. *See Langley*, 502 F.3d at 480-81(finding benefit plan fell under payroll practice exception despite language in the SPD ,which described all employer's benefits, which stated that plans were designed to meet legal requirements of welfare benefit plans under ERISA and did not specifically exclude the benefit plan in question); *Schwartz v. Liberty Life Assurance Co. of Boston*, 470 F.Supp.2d 511, 516-17 (E.D. Pa. 2007) (finding an employer's short term disability plan was an exempted payroll practice because the benefits were paid out of the employer's general assets despite language in the SPD that informed employees of their rights under ERISA).

3. *Segregation of Funds*

Plaintiff also argues that once the funds used to pay short term disability benefits are segregated from Whirlpool's general assets and placed in the designated bank account, the funds

become trust funds and assets of the ERISA plan. In support of this argument, Plaintiff cites to the Tenth Circuit opinion *In re Luna*, 406 F.3d 1192 (10th Cir. 2005).[4] Although the *Luna* opinion contains a discussion regarding plan assets, the Court fails to see how *Luna* supports Plaintiff's argument in this case. The *Luna* Court addresses whether unpaid contributions to a plan governed by ERISA are "assets" of the ERISA plan. *In re Luna*, 406 F.3d at 1198. The contributions at issue in *Luna* were paid into a designated employee benefit plan specifically covered by ERISA. *Id.* at 1197. This case, on the other hand, does not involve funds which are paid into an ERISA plan. Quite to the contrary, this case involves funds specifically exempted from ERISA governance.

To the extent Plaintiff is arguing that Whirlpool's mere use of a separate account to administer benefits transforms those funds into ERISA plan assets, this argument must fail. In an advisory opinion, PWBA Advisory Op. 93-02A (Jan. 12, 1993), the Department of Labor discussed the issue of when employer assets become plan assets. The DOL stated:

> [A]n employer sponsor of a welfare plan may maintain such a plan without identifiable plan assets by paying plan benefits exclusively from the general assets
> of the employer. This would be true even if the employer set aside some of its general assets in a segregated employer account for the purpose of providing benefits under the plan. However, if the employer took steps that caused the plan to gain a beneficial ownership interest in particular assets, there would be, under ordinary notions of property rights, identifiable plan assets. For example, a welfare plan generally will have a beneficial interest in particular assets if the employer establishes a trust on behalf of the plan, sets up a separate account with a bank or other third party in the name of the plan, or specifically indicated in the plan documents or instruments that separately maintained funds belong to the plan.

---

[4] Plaintiff's brief actually cites to *"Navarre v. Luna*, 406 F.3d 1192 (10th Cir. 2005)," and Defendant's brief cites to "*Luna v. Navarre*, 406 F.3d 1192 (10th Cir. 2005)," however, the Court believes that both parties and the Court are all referring to the same case.

[Docket No. 51-5, at 2, n.1.] Although this opinion does not address the exact situation presented in this case, it expresses the DOL's position that general assets may be segregated into separate accounts without becoming plan assets. In this case, Whirlpool has taken no steps that would cause its ERISA plan to gain a beneficial ownership interest in the funds transferred to the specified benefits payment account. Whirlpool utilizes a bank account to pay the short term disability benefits, not a trust. The account is owned by Whirlpool and set up in its name, not the name of the ERISA plan. Further, the Court is not aware of any documents which indicate the funds transferred for payment of disability claims belong to the plan. Accordingly, the Court finds that the funds transferred to Whirlpool's separate benefits payment account remain assets of the company and do not become ERISA plan assets.

Plaintiff points out that ERISA governed long term disability benefits are paid out of the same account as short term disability benefits. The Court, however, does not believe this fact changes whether the short term disability plan qualifies as a payroll practice. The account simply facilitates the payment of benefits to employees. It does not change the nature or funding of the short term disability plan. In addition, Whirlpool's benefits analytics group tracks which funds were used for payment of short term disability benefits and which were used for payment of long term disability benefits. [Docket 44-6, at 19.] Therefore, even assuming the long term disability funds could be considered assets of the ERISA plan,[5] there is no co-mingling of plan and non-plan assets.

## **CONCLUSION**

---

[5] Based on the DOL advisory opinion discussed above [Docket No. 51-5], it is far from clear that the funds used to pay long term disability benefits would constitute identifiable plan assets.

Whirlpool's short term disability benefit plan falls within the payroll practice exclusion set forth in the regulations accompanying ERISA. As a result, Whirlpool's Re-Urged Motion for Partial Summary Judgment [Docket No. 44] relating to Plaintiff's ERISA claims is hereby GRANTED.

IT IS SO ORDERED.

James H. Payne
United States District Judge
Northern District of Oklahoma